## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **SHERRY L. EVERETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.  6:14-CV-2150-SLB** |
| ) | |
| **CAROLYN  W.  COLVIN,  Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Sherry Everett brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking

review of the Commissioner of Social Security's ["Commissioner"] final decision denying

her application for  a period of disability, disability insurance benefits ["DIB"], and

supplemental security income ["SSI"]. Upon review of the record and the relevant law, the

court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Ms. Everett protectively filed a Title II application for a period of disability and DIB

on November 14, 2008. (*See* doc. 8-4 at R.112.)[2]  She also protectively filed a Title XVI

application for SSI on November 14, 2008.  (*Id.*)  These claims were denied initially on

---

[1] The judicial review provision for a disability insurance benefits claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see* 42 U.S.C. § 1383(c)(3).

[2] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

March 20, 2009. (*Id.*) Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held on April 20, 2010 in Cullman, Alabama. (*Id.*) After the hearing, the ALJ found Ms. Everett "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at R.121.) In light of this finding on June 18, 2010, the ALJ denied Ms. Everett's claims for a period of disability and DIB, as well as her claim for SSI. (*Id.*)

Ms. Everett then requested the Appeals Council to review the ALJ's decision. (*Id.* at R.127.) On July 27, 2011, the Appeals Council granted review under the substantial evidence provision of the Social Security Administration regulations, 20 C.F.R. §§ 404.907, 416.1470. (*Id.*) It thereafter vacated the underlying decision and remanded the case to the ALJ with instructions: (1) to give further consideration to the opinions of John Haney, Ph.D., and Jeffrey Long, D.O.; (2) to further evaluate the claimant's mental impairment; (3) to further consider the claimant's residual functional capacity; and (4) to obtain evidence from a vocational expert. (*Id.*)

On remand, the ALJ held a hearing on February 4, 2013. (*Id.* at R.133.) Following the hearing, the ALJ determined Ms. Everett "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at R.145.) Therefore, on March 7, 2013, the ALJ denied her claims for a period of disability, DIB, and SSI. (*Id.*)

Ms. Everett again requested the Appeals Council to review the ALJ's decision. (Doc. 8-2 at R.15.) On September 4, 2014, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision." (*Id.* at R.1.) Thus, it denied Ms. Everett's request for review and the ALJ's decision became the final decision of the Commissioner in the case. (*Id.*)

After the denial of review by the Appeals Council, Ms. Everett filed the present appeal in this court. (*See generally* doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Indeed, the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

3

"The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (quoting *Martin*, 894 F.2d at 1529). In contrast, conclusions of law made by the Commissioner have no presumption of validity and are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "Failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI. *See* 20 C.F.R. §§ 404.1520(a)(1)-(4), 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The specific steps in the evaluation process are as follows:

**1.  Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. §§ 404.1572, 416.972.  If the claimant is working and that work is substantial

---

[3]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. §§ 404.1572, 416.972.

gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity."  *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (2012).[4]

The ALJ found that Ms. Everett had "not engaged in substantial gainful activity since January 1, 2009, the alleged onset date."  (Doc. 8-4 at R.136.)  He also found that she her date last insured for purposes of DIB was December 31, 2009.  (*Id*.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  The regulations provide:  "[I]f you do not have any impairment or combination of impairments which

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a). A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling.  *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. §§ 404.1523, 416.923.  A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Everett had "the following severe impairments:  cervical degenerative disc disease and major depressive disorder."  (Doc. 8-4 at R.136.)  He also noted, "Although [Ms. Everett] has other medically determinable impairments, these conditions are not 'severe' as defined by the Regulations because they do not result in any work-related limitations.[5]  (*Id.* at R.136.)

---

[5] The ALJ noted that "[t]he record shows diagnoses of chronic obstructive pulmonary disease, hepatitis C, migraine headaches, osteoarthritis of the right hand, manic depression, and hypertension, but no work-related limitations."  (Doc. 8-4 at R.136.)  Furthermore, "[s]ome of the records pre-date the alleged onset date of disability and show no follow-up for any symptomatology."  (*Id.*)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets or is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. §§404.1520(a)(4)(iii), (d)-(e), 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [the Listings]. If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Everett did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Doc. 8-4 at R.137.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment or combination of impairments does not meet or equal the criteria of a Listing, the claimant must prove that her impairment or combination of impairments prevents her from performing her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and

8

mental demands of [the claimant's] past relevant work.   20 C.F.R. §§ 404.1560(b), 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled.   20 C.F.R. §§404.1560(e), 416.960(e).   The claimant bears the burden of establishing that the impairment or combination or impairments prevents her from performing her past relevant work.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

Based on his "careful consideration of the entire record," the ALJ found Ms. Everett had –

> the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift 20 pounds occasionally.  She can concentrate and attend to simple tasks for an eight-hour workday at two-hour increments with all customary rest breaks.  She would work best in a well-spaced environment with familiar co-workers to minimize stress and distractions.  She can tolerate ordinary work pressures but should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands.  Any contact with the public and co-workers should be casual or on an occasional basis.  Any feedback should be supportive, tactful, and non-confrontational, so occasional contact with supervisors and co-workers.  Any changes in the work setting should be presented gradually and infrequently to give time for adjustment.

(Doc. 8-4 at R.139.)  Based on the RFC, the ALJ found that Ms. Everett could not perform her past relevant work as a short order cook.  (*Id*. at R.144.)

9

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1).   The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work, we will use the same [RFC] assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your [RFC] and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove she is not capable of performing such other work.[6]

---

[6]The Eleventh Circuit has held:

> In practice, the burden temporarily shifts at step five to the Commissioner.  *See Jones* [*v. Apfel*], 190 F.3d [1224,] 1228 [(11th Cir. 1999)].  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  *See id.*  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  *See id.*  The

The ALJ found that Ms. Everett, who was born in 1968, was a "younger individual." (Doc. 8-4 at R.144.)  He found Ms. Everett had at least a high school education and could communicate in English.  (*Id*.)  He also found that "[t]ransferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  (*Id*.)

The ALJ consulted a vocational expert [VE]; the VE testified that an individual with Ms. Everett's RFC and vocational factors could perform jobs that exist in significant numbers in the national economy, including assembler, product marker, and laundry sorter. (Doc. 8-3 at R.50-51; doc. 8-4 at R.144-45.)  Based on this testimony, the ALJ found Ms. Everett could make a successful adjustment to perform other work that exists in significant numbers in the national economy.  (Doc. 8-4 at R.145.)

Therefore, the ALJ found that Ms. Everett had not been under a disability at any time from January 1, 2009, the alleged onset date, through March 7, 2013, the date of his decision. (*Id*.)

---

temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)(quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

11

**B.  MS. EVERETT'S ISSUE ON APPEAL**

Ms. Everett argues, "the ALJ's RFC findings and rationale are not based on substantial evidence." (Doc. 11 at 6.)  In her brief, she states:

> The ALJ's RFC assessment on remand was even less restrictive than the first time when in the June 2010 decision the RFC for light work was at least compliant with SSR 96-8p addressing postural, manipulative and environmental restrictions (R. 116-117).  On remand the ALJ made a blanket finding of "light work as defined except she can lift twenty pounds occasionally" (R. 137) which is merely an element of and not a departure from the definition of light work pursuant to 20 CFR 404.1567 (b).  The rest of the RFC addressed mental restrictions.  The orthopedist ME (R. 256) readily acknowledged no expertise in the practice of mental health (R. 40).  The ALJ addressed the AC's concerns about addressing the opinion evidence and reconsidering mental RFC (R. 427) by continuing to reject the opinions of both consultative psychologist Dr. Haney as well as treating physician Dr. Long (R 142); and continuing to adopt the non examining MSO from the State Agency psychologist (R. 143).
>
> . . .
>
> The ALJ failed to comply with the AC's remand order.  The ALJ continued to reject in whole or in part every examining practitioner's opinion of record, whether consultative or treating, and finding an RFC for light work even less restrictive than before without any function by function analysis.  He purported to rely on the opinion of a medical expert who he reported as testifying to a limited range of light work, when the only restrictions to a full range of light work (higher than in the first decision), were mental, beyond the scope of the ME's expertise.
>
> The ALJ failed to comply with SSR 96-8p requiring a function by function assessment based upon all of the relevant evidence. The medical evidence after the first remanded ALJ decision continued to show both upper and lower spine impairments and limitations objectively worse by MRI findings.

(*Id*. at 7-9.)  The court has reviewed the entire record before the ALJ, as well as the parties' briefs, and it finds that the Commissioner's decision is due to be affirmed.

### 1.  Step Two:  Claimant's Impairments

Ms. Everett argues that the ALJ erred at step two of the sequential evaluation by failing to find she had severe impairments relating to her lumbar spine limitations.  (Doc. 11 at R.6.)  The ALJ found that Ms. Everett only had severe impairments of cervical disc disease and major depressive disorder. (Doc. 8-4 at R. 136.)  He did not, however, find a medical impairment arising from any diagnosis related to her lumbar spine.

A severe impairment is one that significantly limits the claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  However, "[n]othing requires that the ALJ must identify, as step two, ***all*** of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination."  *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx 823, 825 (11th Cir. 2010).  Therefore, "Even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [Ms. Everett] had a severe impairment:  and that finding is all that step two requires."  *Id.* at 824-25 (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Any error regarding the ALJ's decision at step two that Ms. Everett did not have a severe impairment related to her lumbar spine was harmless.  The ALJ noted that he had

"considered all symptoms," specifically stating that Ms. Everett complained that she was disabled "due to chronic, debilitating pain and dysfunction."  (Doc. 8-4 at R.139.)

The court finds no reason to reverse the decision of the Commissioner based on the ALJ's failure to find Ms. Everett had a severe impairment of the lumbar spine.

### 2.  Evaluating Medical & Psychological Opinion Sources

Ms. Everett argues that the ALJ erred by failing to "address[ ] the [Appeals Council's] concerns about addressing the opinion evidence and reconsidering mental RFC (R.427) by continuing to reject the opinions of both consultative psychologist Dr. Haney as well as treating physician Dr. Long (R.142); and continuing to adopt the non[-]examining MSO from the State Agency psychologist (R.143).

"Medical opinions are statements from physicians and other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). When evaluating medical opinions, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore." *Id.* at 1179. In determining how much weight to give each opinion, the ALJ considers several factors, including: (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; (5)

14

whether the doctor is a specialist; and (6) "other factors."[7] *See* 20 C.F.R. §§ 404.1527(c);

416.927(c). Indeed, "an acceptable medical opinion as to disability must contain more than

a mere conclusory statement that the claimant is disabled. It must be supported by clinical

or laboratory findings." *Oldham v. Schweiker* , 660 F.2d 1078, 1084 (5th Cir. 1981) (citing

20 C.F.R. § 404.1526).

In this Circuit –

> Although the testimony of a treating physician is generally entitled to "substantial or considerable weight," the ALJ may discount that testimony when there is "good cause." *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *Id*. *[The court] will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it.* *See Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)]. . . . *[If] the ALJ's rationale was adequate, [the court] will not disturb the credibility determination.* *See Lewis*, 125 F.3d at 1440.

---

[7] With regard to "other factors" the regulations state:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6).

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822-23 (11th Cir. 2015)(emphasis added).

In this case, the ALJ stated the following regarding the medical evidence of record:

The claimant alleges she cannot work due to chronic, debilitating pain and dysfunction. She testified she is too jittery to drive and that she hires a friend to shop for her.

Testifying also was Dr. John Axline, Board Certified Orthopaedist, as the Medical Expert. Dr. Axline testified, in his opinion and based upon the medical evidence of record, the claimant complained of migraines, but they were never properly described in the record. He cited Exhibit 2F where the claimant complained of headaches but there was no distress. He further testified that Exhibit 2F noted pupils were a sign of opiate abuse. It also reflects emergency room noncompliance. He testified that in Exhibit 27F, there was a description of the claimant had alcohol use, and she had left the emergency room against medical advice. He testified that there was only disc degeneration of the lumbar spine. He also testified that there appeared an incredible request for an increase in pain medications. ***He testified that Dr. Long in 17F, noted to be a General Practitioner, gives limited range of motions of the claimant, but he fails to support his opinions with any objective medical evidence. Although Dr. Long opined the claimant had a limited range of motions, the medical records show all normal.*** Dr. Axline testified that the claimant had degenerative disc disease of the lumbar spine, and she has disc disease, but there is no arthritis of the lumbar spine and cites Exhibit 23F. Dr. Long discussed medication refills by the claimant, her weight gain and description of pain. He says that although Dr. Long opined the claimant carry only 5 pounds, Exhibit 24F, the claimant testified she could easily carry a gallon of milk. Further, Dr. Long recommended that the claimant was unable to push/pull; there was no he failed to a basis for such opinion. The claimant has normal balance, normal inner ear, and stooped 90 degrees. The Medical Expert testified that if the claimant does not drive, it is not because of a medical reason. He said the claimant should not be around dangerous machinery if using alcohol. Cigarettes have [caused] damage to the lungs. He opined the "pain" form on page 2 shows medicine side effects but

never a change in medications.  Dr. Long listens to the claimant and documents it but his opinions as to the complaints do not meet objective medical evidence.

The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. All of the claimant's impairments have been considered in combination without regard to whether any impairment if considered separately would be vocationally relevant.  The undersigned adopts the residual functional capacity of physical limitations and comments from the Medical Expert.  He is a Board Certified Orthopaedist, and although having not examined the claimant, his opinions are objectively document unlike the opinions of the Dr. Long, the Family Doctor.

. . .

Medical evidence shows the claimant has underlying medical conditions, but it does not support her allegations of severe and chronic limitation of function to the degree that it would preclude the performance of all substantial gainful activity.  An individual's symptoms are considered along with pertinent sips and laboratory findings shown in the record.  The regulations describe the weight to be accorded such evidence.  Section 404.1528-29 (Title II) and 416.928-29, specifically provide that a person's statements [alone] are not enough to establish disability.  A finding of disability will not be based on symptoms.  There must be medical signs or laboratory findings showing the presence of a medical condition that could be reasonably expected to produce the symptoms alleged.

The claimant was recently admitted to the Lakeland Community Hospital with complaints of shortness of breath, cough and congestion.  However, chest x-ray revealed no evidence of acute, active or malignant disease and the EKG revealed normal sinus rhythm.  The claimant had also complained of heart condition but testing in November 2012, show a CT of the brain was negative, and an Echocardiogram revealed that the left ventricle size was normal and function appeared normal, with an ejection fraction approximately 80%.  There

was no atrial septal defect, ventricular septal defect or mural thrombi seen, and there was increased LA with mild mitral valve regurgitation and tricuspid regurgitation was noted. (Exhibit 26F) Thus, the undersigned finds that any heart condition alleged by the claimant is not severe.

The claimant was treated by [Dr. Long on February 1, 2013] (Exhibit 30F). The examinations of the claimant by Dr. [Long] noted the claimant was in no acute distress and was well developed and well nourished. Her neck/thyroid was supple, full range of motion, no cervical lymphadenopathy. The heart showed no murmurs, regular rate and rhythm, and the S1, S2 was normal. The claimant's lungs were clear to auscultation bilaterally, and her extremities showed no clubbing, cyanosis, or edema. The claimant was neurologically nonfocal, motor strength normal upper and lower extremities and sensory exam intact.

Credibility is not judged solely on the manner in which a person testifies or otherwise expressed his complaints. If this were not so there would be little point in the regulatory requirements under section 404.1508, 416.908, which provide that a person must submit medical evidence in support of a claim for benefits rather than merely offer verbal and written statements of symptoms. Given the regulatory provisions of sections 404.1508, 404.1513 and 404.1528-29 & sections 416.908, 416.913 and 416.928-29, credibility must be assessed primarily based on the extent to which symptoms and allegations are consistent with and supported by the medical evidence, with particular attention being paid to the clinical and laboratory findings of the record.

In accordance with Social Security Ruling 96-6p, the undersigned considered the administrative findings of fact made by the state agency consultants and weighed these opinions as statements from non-examining expert sources. The residual functional capacity conclusions reached by the single source decision maker (Exhibit 7F) is given no weight, as this is not an acceptable medical opinion. The mental limitations opinion of Guendalina Ravello, Ph.D., is given considerable weight. Although this consultant is non-examining, and therefore his opinions do not as a general matter deserve as much weight as those of examining or treating medical sources, those opinions do deserve some weight, particularly in a case like this in which there exist a number of

other reasons to reach similar conclusions (as explained throughout this decision). In this case, the undersigned notes the consultants' specific findings were not entirely consistent with the conclusion reached herein as additional evidence . . . has been submitted. (Exhibit 11F). As such, the undersigned assigns the opinion of the state agency consultant appropriate weight, insofar as they are consistent with the evidence of record as a whole and support a finding that the claimant is 'not disabled.'

*In this case, the opinion of Dr. Haney, a one-time consultative psychologist, opined that the claimant's ability to function in most jobs would be moderately to severely impaired due to physical and emotional limitations* (Exhibit 8F). *The undersigned discounts such opinion of Dr. Haney who saw the claimant only once for a consultative examination. Such opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. In addition, he is a psychologist and not a medical doctor, and therefore not qualified as an expert to offer a medical opinion regarding the physical problems of the claimant. It appears that Dr. Haney apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.* In fact, upon mental status examination he diagnosed major depressive disorder; however, he noted the claimant is able to manage funds, take care of her mother and her mentally disabled daughter. The claimant reported one psychiatric hospitalization but this was remote, when she was in her 20's. She also reported that her medications help and produce no side effects. *Dr. Haney found that her recent and remote memory appeared intact, and she exhibited no psychotic symptoms, no auditory or visual hallucinations, and no delusions. Her conversation appeared logical and goal directed, and he accepted her self-report that she was depressed. As such, the doctor's report appears to contain inconsistencies, and the doctor's opinion of the claimant's ability to function on a job is accorded no weight.*

*The undersigned rejects the opinions of Dr. Long, who stated in April 2010 that the claimant "is not capable of gainful employment"* (Exhibit 17F). The final responsibility for deciding the issue of disability is reserved to the Commissioner of the Social Security Administration (Social Security Ruling

96-Sp). ***Further, the opinion of Dr. Long is not entitled to controlling weight under Social Security Ruling 96-2p because it is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. Dr. Long is the family doctor, and the Medical Expert who testified that the limitations of the claimant expressed by Dr. Long are not supported by the objective records in the file reviewed his medical reports. In addition, these opinions conflict with the other medical records.*** In February 2009, Dr. Vakharia noted that the claimant was in no acute distress (Exhibit 6F). Musculoskeletal examination revealed minimally weaker handgrip on the right, 4 to 5/5, compared to 5/5 on the left. Examination showed no muscle wasting of small joints of the hand and no acute synovitis. The claimant's gait was normal and she could walk on the tiptoes and the heels. ***The undersigned has adopted the opinion of the medical expert, who had access to all of the medical evidence, including that which was not available to Dr. Long in his opinions regarding limitations of the claimant.***

A treating physician's opinion may be disregarded if it is unsupported by objective medical evidence or is merely conclusory. . . . ***Dr. Long's opinions contain inconsistencies, and the doctor's opinion is rendered less persuasive.***

The undersigned defers to the medical expert over the alleged debilitating limitations assessed by Dr. Long in July 2012 (Exhibits 17F and 24F). Dr. [Long] completed these forms at the request of the claimant's attorney and are little more than "check mark" or circle forms of several prepared responses. As noted by the Medical Expert, a Board Certified Orthopaedist, these residual functional capacities are unsupported and the "pain" and "fatigue" forms are based entirely upon the subject complaints of the claimant. Dr. Long offered no objective support of his opinions or reference to any portion of the medical evidence. Dr. Long's treatment records therein do not support the alleged limitations. He completed an assessment of the claimant's "Fatigue/Weakness," which is based on subjective findings from statements from the claimant. None of these forms appears in Dr. Long's medical records. These forms are inconsistent with the claimant's activities of daily living. The claimant testified that her daytime activities include getting her children up and on the bus; she folds clothes, watches television, and reads. This entry shows Dr. Long opined the claimant could "never" push and pull movements, climb stairs, balance, or stoop, defined as bending downward and forward from the waist. However, the medical records and other notations in

the record fail to support such extreme limitations.  ***Dr. Long's opinion that the claimant was disabled by such limitations does not appear in his notes, as there is no indication he ever talked to claimant about her ability to work. Cumulatively, these reasons explain why the undersigned gives little weight to Dr. Long's opinions. These opinions offer little more than a conclusory statements that are unsupported by the medical evidence.***

The undersigned has given substantial weight to the opinion of Dr. Norwood, a consultative neurologist (Exhibit 20F) that the claimant has no neurologic deficit or evidence of physical neurologic impairment to do work related activities including sitting, standing walking, and lifting, carrying or handling objects.  He completed a medical source statement for a limited range of medium work.  However, the undersigned discounts his conclusion that the claimant can sit, stand, and walk only one hour without interruption and stand or walk only two hours each total because these findings are inconsistent with the narrative of his report.  They are also inconsistent with the Medical Expert's opinion who reviewed Dr. Norwood's report as well as the other medical evidence in the file.

Accordingly, the undersigned has found that the claimant can perform a limited range of light work as testified to by the Medical Expert.  While the undersigned understands the claimant has taken on responsibility of adopting a grandchild, caring for another disabled child and her mother, and such is very admirable.  However, the claimant has a wide range of responsibilities and these activities reflect the claimant's ability to perform work at the light level and the rules and regulations of the Act are followed and the claimant is not disabled.

As for the claimant's mental residual functional capacity, the undersigned gives great weight to the assessment of the state agency psychological consultant (Exhibit 11F).

(Doc. 8-4 at 139-44 [emphasis added].)

The ALJ clearly and specifically articulated the weight he accorded the opinions of Dr. Long and Dr. Haney and his rationale is adequate and supported by substantial evidence. Therefore, the court will not disturb his findings.  *See Hunter*, 808 F.3d at 822-23.

### 3.  Function-by-Function Assessment

Ms. Everett argues that the ALJ erred in failing to assess her RFC function by function in accordance with SSR 96-8p.  The law does "not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole."  *Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 263 (11th Cir. 2009)(quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005)).  In this case, the ALJ's Decision is sufficient to allow the court to conclude that he considered Ms. Everett's condition as a whole.  Indeed, Ms. Everett's conclusory argument does not demonstrate otherwise.  (*See* doc. 11 at 7-9.)

The court finds, "The ALJ performed a proper RFC function analysis, based on substantial evidence, and [it] shall defer to his conclusions."  *Castel*, 355 Fed. Appx. at 263.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

22

**DONE** this 31st day of March, 2016.

SHARON      LOVELACE      BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE